**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

EUGENE DARREL RUTLEDGE,

               Petitioner,

    v.

M.D. MCDONALD, Warden,

               Respondent.

_____/

No. C 08-5426 CRB (PR)

**ORDER DENYING PETITION FOR A
WRIT OF HABEAS CORPUS;
DENYING CERTIFICATE OF
APPEALABILITY**

      Petitioner, a state prisoner at High Desert State Prison in Susanville, California, seeks a writ of habeas corpus under 28 U.S.C. § 2254 challenging a criminal judgment from Alameda County Superior Court.  For the reasons set forth below, the Petition for a Writ of Habeas Corpus is **DENIED**.

### PROCEDURAL BACKGROUND

      On April 24, 2007, a jury convicted Petitioner of nine counts of second degree robbery and one count of attempted second degree robbery.  Doc. #15-2, Ex. 1 at 458–59. The jury also found true sentence enhancement allegations that Petitioner had one prior federal felony conviction for unarmed bank robbery and one prior strike conviction under California's "Three-Strikes" law.  Id. at 482–84.  On May 25, 2007, the trial court sentenced Petitioner to twenty years and four months in state prison.  Id. at 499–500.

1   Petitioner appealed, and the California Court of Appeal in an unpublished opinion

2   affirmed the judgment of the trial court.  Doc. #15-2, Ex. 8.  Thereafter, the California

3   Supreme Court denied Petitioner's petition for review.  Doc. #15-2, Ex. 10.

4   After Petitioner filed the instant federal Petition for a Writ of Habeas Corpus, the

5   Court issued an order to show cause why the writ should not be granted.  Doc. ## 1 & 7.

6   Respondent filed an Answer and Petitioner filed a Traverse.  Doc. ## 15 & 20.

## FACTUAL BACKGROUND

8   The California Court of Appeal summarized the facts of the case as follows:

9   The robberies and the attempted robbery occurred over
10  several weeks at several grocery stores and a fast food restaurant
    in Oakland.

11  The Smart & Final Robberies

12  At 7:45 p.m. on January 10, 2006, Bernice Lek was
    counting money in a cash register at a Smart & Final store in
13  Oakland.  [Petitioner] approached her, put a box of dog food on
    the counter, and said, "Give me all your fucking money."  He
14  was wearing a beanie-style cap and his shoulder-length hair was
    braided.  Lek had seen [Petitioner] in the store on at least two
15  previous occasions.  She assumed he was kidding, so she giggled.
    In response, [Petitioner] – who was standing right next to Lek –
16  said, "I'm not fucking with you.  Drop the money, back up and
    don't say shit."  Lek dropped the money and backed away from
17  [Petitioner].  [Petitioner] then took the money and walked out of
    the store.  The store's surveillance system recorded the robbery
18  and fingerprints from the dog food box matched [Petitioner's].
    Lek identified [Petitioner] at a March 10, 2006 physical lineup
19  (the lineup) and at trial.

20  [Petitioner] returned to the Smart & Final store on
    February 3, 2006 at 5:50 p.m.  Karl Cuyugan was ringing up
21  customers at a cash register when [Petitioner] approached him
    and said something to the effect of, "This is a robbery, don't do
22  anything stupid."  Cuyugan opened the cash register and backed
    away.  At that point, two other employees – Alfonso Quintor and
23  Delbert Dunn – approached Cuyugan's register.  [Petitioner] put
    the money in his pocket and hit Dunn.  Cuyugan watched as
24  [Petitioner], Quintor, and Dunn got into a fight.  [Petitioner]
    eventually ran out of the store.  Cuyugan and Quintor identified
25  [Petitioner] at the lineup and at trial.

26  //

27

28                                          2

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#### The Albertson's Attempted Robbery

On the afternoon of January 31, 2006, Tracey Rutledge – a cashier at an Albertson's grocery store in Oakland – was robbed by [Petitioner].[1]  As Tracey finished ringing up a customer, [Petitioner] came up behind her and said something like, "Open the f'ing drawer and give me the money."  [Petitioner] repeated his demand twice.  When Tracey could not open the cash register, [Petitioner] said, "get it open. I'm not playing, get it open."  Tracey eventually opened the cash register and ran away.  A surveillance camera recorded the robbery.  Tracey identified [Petitioner] at the lineup and during trial.

#### The Jack-in-the-Box Robberies

On January 25, 2006, Agustin Sanabria was managing a Jack-in-the-Box restaurant in Oakland.  Some time between 5:30 and 6:30 p.m., [Petitioner] came into the restaurant, jumped over the front counter, and said "Open the fucking registers" several times in an angry voice.  [Petitioner] was wearing a beanie and a black jacket.  According to Sanabria, [Petitioner] "got angrier" and started slamming his hands on the counter.  Sanabria opened the cash register and [Petitioner] grabbed money out of it.  [Petitioner] then went to the cash register at the drive-thru window, took money out of it, and fled.  The robbery was captured on the restaurant's surveillance video.  Sanabria identified [Petitioner] at the lineup and at trial.

[Petitioner] returned to the same Jack-in-the-Box on the morning of February 7, 2006.  Pablo Vargas was working in the drive-thru window when [Petitioner] came inside the restaurant and yelled, "Open the register."  [Petitioner] was three feet from Vargas.  Vargas opened the register; [Petitioner] took the money and ran out of the restaurant.  This robbery was also recorded by the restaurant's surveillance camera.  Vargas identified [Petitioner] at trial and at the lineup.

#### The FoodMaxx Robberies

On January 31, 2006, Dalila Carrillo and Beverly Greenly were working as cashiers at a FoodMaxx grocery store in Oakland.  At 9:15 p.m., [Petitioner] came up to Greenly and asked her whether the store sold stockings or panty hose.  Greenly responded that the store did not carry either item.  [Petitioner] then approached Carrillo and asked for her name.  She told him her name; then he "looked at [her] directly" and said, "Dalila, do me a favor, open the register and give me all the money."  According to Greenly, [Petitioner] was "right up on [Carrillo], right behind her" when he demanded the money.

[1]  "Tracey Rutledge is not related to [Petitioner].  For convenience and clarity, we refer to Tracey Rutledge by her first name."

3

1    Greenly watched [Petitioner] "trotting" out of the store.  Carrillo
     and Greenly identified [Petitioner] at the lineup and at trial.

2
           At 11:00 p.m. on February 2, 2006, Lanika Scott was
3    working as a cashier at the same FoodMaxx store.  While she
     spoke with a customer, [Petitioner] came up behind her and said,
4    "Don't play with me, just give me the money."  [Petitioner] was
     "really close" to Scott; she noticed that he was wearing a dark
5    jacket with a hood and pajama-type pants.  He had shoulder-
     length cornrows in his hair.  Scott opened the cash register and
6    moved away from it; [Petitioner] took the money out and then
     left the store.  Scott identified [Petitioner] at the lineup and at
7    trial.

8          On the evening of February 2, 2006, Andrew Martinez – a
     loss prevention agent at FoodMaxx – was reviewing a
9    surveillance video from the January 31, 2006 robbery.  The
     person in the video had tightly-braided hair and a thin mustache.
10   Martinez was also monitoring the store's surveillance cameras.
     As he was watching the store's surveillance cameras, he saw
11   [Petitioner] rob Scott.  Martinez thought that [Petitioner] looked
     similar to the person who robbed the store on January 31, 2006.
12   Martinez identified [Petitioner] at the lineup and at trial.

13
     Doc. #15-2, Ex. 8 at 1–4.
14
           In March 2006, Sergeant Alexander Perez, an Oakland Police Department ("OPD")
15
     officer who was assigned to investigate the FoodMaxx robberies, gave a still photograph of
16
     the suspect taken from surveillance camera footage to reporter Harry Harris of the Oakland
17
     Tribune.  Doc. 15-2, Ex. 4 at 838.  Sergeant Perez asked Harris if he would print the
18
     photograph in the Tribune so that a "caller or reader would call in and . . . identify the
19
     person."  Id.  On March 8, 2006, the Tribune published a story regarding the string of
20
     robberies and included the photograph from Sergeant Perez.  Doc. #1 at 92; see Doc. 15-2,
21
     Ex. 4 at 838.  Thereafter an anonymous caller phoned the OPD and identified the person in
22
     the photograph as Petitioner.  Doc. #1 at 103; see Doc. 15-2, Ex. 4 at 838–39.  After
23
     comparing a previous booking photograph of Petitioner to the surveillance camera footage,
24
     OPD determined that Petitioner appeared to be the suspect.  Doc. #1 at 90.  OPD also learned
25
     that there was a federal warrant for Petitioner's arrest for a violation of probation on a prior
26
     bank robbery conviction.  Id. at 90 & 103.
27

28                                              4

**United States District Court**
For the Northern District of California

At approximately noon on March 8, 2006, an OPD officer arrested Petitioner in front of his residence for the probation violation. Doc. #1 at 96. After arresting Petitioner, OPD officers conducted a "protective sweep" of the house, but did not seize any evidence. See id. Simultaneously, OPD officers sought and, later that day, obtained a search warrant for the house. Id. at 90, 96–97 & 103. After they obtained the warrant, OPD officers searched the house and seized some items of physical evidence related to the string of armed robberies, including two jackets and two "beanie" hats. Id. at 90, 98–101.

On March 10, 2006, OPD conducted a lineup and several witnesses identified Petitioner as the person responsible for the robberies. Doc. #1 at 104–05.

On March 13, 2006, Petitioner was arraigned; he pled not guilty on May 9, 2006. Doc. #1 at 108. On May 22, 2006, Petitioner waived his right under California Penal Code section 859(b) to have a preliminary examination within ten court days of the date he entered his plea.[2] Id. The preliminary examination began on June 7, 2006; Petitioner was held to answer on a number of charges on June 16, 2006. Id. An information was filed against him on June 29, 2006; trial was set for August 14, 2006. Id.

On August 2, 2006, Petitioner's attorney informed the trial court that after a review of the case file, he had doubt whether Petitioner was competent to stand trial. Doc. #1-1 at 2–3, 9–10. Based on this oral motion made pursuant to California Penal Code section 1368,[3] the

_____

[2] Petitioner disputes that he waived time. See Doc. #1 at 16 & 108.

[3] At the time of Petitioner's trial, California Penal Code section 1368 read in relevant part:

. . . .

(b)      If counsel informs the court that he believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing which is held pursuant to Sections 1368.1 and 1369. If counsel informs the court that he or she believes the defendant is mentally competent, the court may nevertheless order a hearing. Any hearing shall be held in the superior court.

(c)      Except as provided in Section 1368.1, when an order for a hearing into the

1    court suspended the proceedings and ordered that Petitioner undergo psychiatric evaluations.

2    Doc. #1-1 at 2–5, 9–10.

3        Following their evaluations, two alienists[4] determined that Petitioner was competent to

4    stand trial.  Doc. #1-1 at 26–36.  On October 25, 2006, the trial court, taking into account the

5    two psychiatric evaluations, determined that Petitioner was competent to stand trial, and

6    reinstated criminal proceedings.  Doc. #15-2, Ex. 36; see Doc. #1-1 at 85–87.  A new trial

7    date of December 11, 2006 was set.  Doc. #1-1 at 85.

8        The same day the court reinstated criminal proceedings, Petitioner moved under

9    People v. Marsden, 2 Cal. 3d 118 (1970), to substitute his newly-appointed counsel because

10   she was not answering his questions in a satisfactory manner and because she did not pursue

11   litigation of his speedy trial rights.  Doc. #1 at 30; Doc. # 1-1 at 83–97.  On November 6,

12   2006, the court held a hearing and denied Petitioner's motion.  Doc. #1-1 at 97.

13       On November 29, 2006, Petitioner filed a motion to dismiss the robbery charges on

14   the ground that his statutory right to a speedy trial under California Penal Code section 1382

15   was violated when the proceedings were temporarily suspended to allow time for the

16   competency evaluations.  Doc. #15-2, Ex. 38.  On December 19, 2006, the trial court granted

17   Petitioner's motion and dismissed the charges against Petitioner.  Doc. #15-2, Ex. 39.  The

18   charges were refiled on January 22, 2007.  Doc. #1-1 at 63–71.

19       On April 24, 2007, a jury convicted Petitioner of nine counts of robbery and one count

20   of attempted robbery.  Doc. #15-2, Ex. 1 at 458–59.

21                                    **LEGAL STANDARD**

22       Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"),

23   codified under 28 U.S.C. § 2254, this Court may entertain a petition for habeas relief on

24   _____

25       present mental competence of the defendant has been issued, all proceedings in
         the criminal prosecution shall be suspended until the question of the present
26       mental competence of the defendant has been determined.

27   [4]  An "alienist" is a psychiatrist who assesses a defendant's sanity or capacity to stand
     trial.  Black's Law Dictionary 30 (3d pocket ed. 2006).

28                                          6

behalf of a California state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The writ may not be granted unless the state court's adjudication of any claim on the merits: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams (Terry) v. Taylor, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decision but unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.

In three recent decisions, the United States Supreme Court reaffirmed that under AEDPA, there is a heightened level of deference a federal habeas court must give to state court decisions. See Harrington v. Richter, 131 S. Ct. 770, 783–85 (2011); Premo v. Moore, 131 S. Ct. 733, 739–40 (2011); Felkner v. Jackson, No. 10-797, 2011 WL 940865 (per curiam) (U.S. March 21, 2011). As the Court explained: "[o]n federal habeas review, AEDPA 'imposes a highly deferential standard for evaluating state-court rulings' and 'demands that state-court decisions be given the benefit of the doubt.'" Felkner, 2011 WL 940865 at *3 (citation omitted).

The standard of review under AEDPA is somewhat different where the state court gives no reasoned explanation of its decision on a petitioner's federal claim and there is no reasoned lower court decision on the claim. In such a case, which applies to some of the claims Petitioner raises here, a review of the record is the only means of deciding whether the state court's decision was objectively reasonable. See Plascencia v. Alameida, 467 F.3d

7

1190, 1197–98 (9th Cir. 2006); <u>Himes v. Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003); <u>Delgado v. Lewis</u>, 223 F.3d 976, 981–82 (9th Cir. 2000).  When confronted with such a decision, a federal court should conduct "an independent review of the record" to determine whether the state court's decision was an objectively unreasonable application of clearly established federal law.  <u>Plascencia</u>, 467 F.3d at 1198; <u>Himes</u>, 336 F.3d at 853; <u>Delgado</u>, 223 F.3d at 982; <u>accord</u> <u>Lambert v. Blodgett</u>, 393 F.3d 943, 970 n.16 (9th Cir. 2004).

With these principles in mind regarding the standard and scope of review on federal habeas, the Court addresses Petitioner's claims.

## CLAIMS & ANALYSIS

Petitioner states he is entitled to relief under 28 U.S.C. § 2254 by raising the following claims:  (1) his Fourth Amendment rights were violated when he did not receive a prompt probable cause hearing and when he was arrested without a warrant; (2) the trial court erred when it rejected Petitioner's motions to challenge peremptorily and to disqualify the trial judge; (3) the trial court erred when it rejected Petitioner's claim that the lineup after his arrest was impermissibly suggestive and resulted in unreliable identifications; (4) the trial court violated Petitioner's due process rights when it excluded potentially exculpatory evidence; (5) Petitioner was denied his Sixth Amendment right to the effective assistance of counsel; and (6) the trial court erred when it permitted the jury to use a prior federal conviction as a strike under California's Three Strikes Law to enhance Petitioner's sentence because there was insufficient evidence to support the conviction.  Doc. #1.  Each claim is analyzed in turn below.

> 1.   <u>Alleged Violation of Fourth Amendment Rights Regarding Warrantless Arrest and Delayed Probable Cause Hearing</u>

Petitioner claims that his Fourth Amendment rights were violated when he was subjected to a warrantless arrest and denied a prompt probable cause hearing thereafter.  Doc. #1 at 13 & 39–42.  Respondent first notes that evidence attached to the Petition shows that Petitioner's arrest was not warrantless and that he was arraigned within the statutory time

8

limits under California law.  Respondent then argues, citing <u>Stone v. Powell</u>, 428 U.S. 465, 481–82 (1976), that Petitioner's Fourth Amendment claim is not cognizable on federal habeas review.  Doc. #15-1 at 10.

Documents attached to the Petition show that on February 27, 2006, Petitioner failed to appear before the Honorable Claudia Wilken, Northern District of California (Oakland Division), for a hearing on an alleged violation of his supervised release and that a bench warrant for his arrest subsequently issued.  Doc. #1-1 at 36–37.  The record also shows that after OPD was alerted that Petitioner might be the suspect in the recent string of armed robberies, officers became aware of his outstanding federal warrant and then arrested him. Doc. #1 at 103.  Also attached to the Petition is a letter from defense counsel to Petitioner explaining that Petitioner was arraigned within the statutory time limits under California law. <u>See</u> Doc. #1 at 107.  Thus, the evidence Petitioner attached to his Petition actually defeats – rather than supports – his claim of an alleged Fourth Amendment violation.

Further, even if Petitioner had submitted evidence that supported his claim, federal habeas review of Fourth Amendment claims is barred under <u>Stone v. Powell</u>, unless the state did not provide an opportunity for full and fair litigation of those claims.  428 U.S. at 481–82, 494.  Here, presumably, defense counsel chose neither to challenge Petitioner's arrest nor to challenge any alleged delay in arraignment because, as the record demonstrates, both challenges would have been meritless.  Accordingly, Petitioner's Fourth Amendment claim is DISMISSED as not cognizable in federal habeas proceedings.

2.    <u>Alleged Error in Rejecting Petitioner's Motions to Disqualify and Challenge the Trial Judge</u>

Petitioner claims the trial court violated his due process rights when it rejected his motions made under California Code of Civil Procedure sections 170.1(a)(6) and 170.6 to

9

United States District Court
For the Northern District of California

1    disqualify and peremptorily challenge the trial judge.[5]  Doc. #1 at 26–28 & 64–68.

2    Respondent argues, citing Estelle v. McGuire, 502 U.S. 62 (1991), that Petitioner is not

3    entitled to relief on this claim because claims of state law error are not cognizable on federal

4    habeas review.  Doc. #15-1 at 20.  Respondent further argues, citing Hicks v. Oklahoma, 447

5    U.S. 343, 346 (1980), that even if Petitioner has presented a federal claim, it still fails

6    because he has not shown that the state laws at issue have been violated or that the state

7    arbitrarily failed to follow its own procedural rules.  Id.  Finally, Respondent argues that

8    Petitioner has failed to point to any evidence in the record of judicial bias.  Id.

9         The Fourteenth Amendment's Due Process Clause guarantees a criminal defendant the

10   right to a fair and impartial judge.  See In re Murchison, 349 U.S. 133, 136 (1955); Kennedy

11   v. Los Angeles Police Dep't., 901 F.2d 702, 709 (9th Cir. 1989).  Judicial rulings alone,

12   however, almost never constitute a valid basis for a bias or partiality motion.  See Liteky v.

13   United States, 510 U.S. 540, 555 (1994).  "[O]pinions formed by the judge on the basis of

14   facts introduced or events occurring in the course of the current proceedings . . . do not

15   constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism

16   or antagonism that would make fair judgment impossible."  Id.  Recusal is appropriate where

17   a "reasonable person with knowledge of all the facts would conclude that the judge's

18   impartiality might reasonably be questioned."  Yagman v. Republic Ins., 987 F.2d 622, 626

19   (9th Cir. 1993).  A federal habeas court reviews a state trial judge's refusal to recuse herself

20   under the abuse of discretion standard used by federal appellate courts to review a district

21   court judge's refusal to recuse herself.  See e.g., Poland v. Stewart, 117 F.3d 1094, 1102–04

22   (9th Cir. 1997) (no abuse of discretion for failure to recuse where:  (1) nothing in the record

23   showed bias or prejudice toward petitioner; (2) the fact that the same trial judge presided

24   over both trials was insufficient to establish bias and prejudice; and (3) the Arizona courts

25

26        [5]   California Code of Civil Procedure section 170.6(a)(6) provides for the
     disqualification of a judge if the judge believes it would be in the interest of justice or if the
27   judge is biased or prejudiced against an attorney representing the parties.  Section 170.6 permits
     a litigant to challenge peremptorily the trial judge if the litigant believes the judge is biased.

28

correctly decided that the trial judge properly presided over petitioner's second trial after denying the prosecutor's motion to dismiss).

Here, the record shows that on March 12, 2007, Petitioner's case was assigned to Alameda County Superior Court Judge Conger, before whom Petitioner appeared the following day for pretrial proceedings. Doc. #1-1 at 39–43. On March 14, 2007, Petitioner moved to disqualify, and to exercise a peremptory challenge against Judge Conger under California Code of Civil Procedure §§ 170.1(a)(6) and 170.6. Id. at 39–46. Judge Conger denied the motion brought under § 170.6 as untimely and, citing § 170.2(b)[6], denied the motion brought under § 170.1(a)(6) because it was based solely on Petitioner's disagreement with her earlier ruling at a Marsden hearing wherein she refused to appoint him new counsel. Id.

Assuming Petitioner has presented a viable federal due process claim of judicial bias – rather than merely a claim of state law error, which is not cognizable here – he does not point to any evidence in the record to support his claim; rather he relies solely on the fact that Judge Conger denied his Marsden motion as proof of judicial bias. But Petitioner's disagreement with Judge Conger's ruling on his motion to substitute counsel, without more, is insufficient to demonstrate bias or prejudice justifying recusal. See Liteky, 510 U.S. at 555. Further, Judge Conger's rejection of Petitioner's motion under § 170.6 as untimely was objectively reasonable, as Petitioner was required under state law to bring the motion at the time of trial assignment on March 12, 2007. Cal. Code Civ. Proc. § 170.6(a)(2); see Doc. #1-1 at 41–46. Indeed, as Judge Conger noted, Petitioner had an entire day of court proceedings on March 13 to bring his motion; however, he did not do so until the second full day of pretrial proceedings, March 14, 2007. See Doc. #1-1 at 41–46. Nor has Petitioner demonstrated that Judge Conger's rejection of his motion as untimely violated state law or

___

[6] California Code of Civil Procedure section 170.2(b) provides that, with limited exception, that the judge has "expressed a view on a legal or factual issue presented in the proceeding" is not grounds for disqualification.

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1 resulted from the state arbitrarily failing to follow its own procedural rules.  See Hicks, 447

2 U.S. at 346.

3        On the record presented here, this Court cannot say either that Judge Conger's

4 impartiality might reasonably be questioned or that her refusal to recuse herself was

5 objectively unreasonable.  See 28 U.S.C. § 2254(d); Williams, 529 U.S. at 411; Liteky, 510

6 U.S. at 555.  Thus, Petitioner is not entitled to relief on this claim.

7        3.     Alleged Due Process Violation due to Impermissibly Suggestive Lineup and
                Resulting Unreliable Identifications
8

9        Petitioner claims his due process rights were violated because the lineup procedure

10 was impermissibly suggestive, thereby rendering unreliable the resulting eyewitness

11 identifications.  Doc. #1 at 33–34 & 76–80.  Respondent argues that Petitioner is not entitled

12 to federal habeas relief on this claim because the state appellate court's rejection of this claim

13 was not objectively unreasonable under AEDPA.  Doc. #15-1 at 23–28.

14        The California Court of Appeal summarized the facts regarding the lineup as follows:

15              On March 10, 2006, two days after [Petitioner's] arrest,
                approximately 24 witnesses viewed him in a six-man lineup at
16              the North County Jail in Oakland.  We have reviewed the
                videotape of the lineup, which was admitted as an exhibit at trial.
17
                Both [Petitioner] and the "fillers" in the lineup were
18              African American.  All of the participants had similar facial hair.
                [Petitioner] wore his hair in a short hairstyle resembling
19              cornrows; at the nape of his neck, a single braid – approximately
                one inch in length – protruded.  One filler had a shaved head and
20              the remaining fillers wore their hair in short, natural hairstyles.

21              The 20-minute lineup was comprised of three distinct
                parts.  During the first part, each participant moved from his
22              place in line, stood at the center of the room, and faced the mirror
                separating the witnesses from the participants.  While standing at
23              the center of the room, each participant made a slow 360-degree
                turn, making quarter turns to enable the witnesses to see the
24              participant's head from several different angles.  Then each
                participant put on a hooded jacket that the police found at
25              [Petitioner's] residence and faced the center of the room for a few
                moments.  [Petitioner] went first.  He kept a straight face while
26              he stood at the center of the room, turned around, and put on the
                jacket.  Two other fillers (Nos. 2 & 6) were also composed as
27              they performed this routine at the center of the room.  The three

28                                                12

1   remaining fillers (Nos. 3, 4, & 5) smiled as they stood at the
2   center of the room, performed their 360-degree turn, and put on
    the jacket.  These fillers also smirked while the other lineup
3   participants were in the front of the room.  At one point during
    this first phase, Filler No. 4 joked with Filler No. 3, pulling Filler
    No. 3's hair and laughing.  A sheriff's deputy then told the fillers
4   to "quit joking around."

5        During the second portion of the lineup, each participant
    walked the length of the room and then went to the front of the
6   room and said, "Give me the fucking money" three times.  Then
    each participant said, "Open the register" three times.
7   [Petitioner] went first.  He – and all of the fillers – laughed as he
    said, "Give me the fucking money" the first time.  As he repeated
8   the phrase for the third time, [Petitioner] rolled his eyes.  Like
    [Petitioner], Filler Nos. 2 and 3 laughed when they said, "Give
9   me the fucking money" the first time.  Filler Nos. 3, 4, and 5
    smiled while the other participants recited their lines.  The last
10  filler, Filler No. 6, lost his composure only when he said "Give
    me the fucking money" for the final time.  During the third and
11  final portion of the lineup, all of the participants moved to the
    front of the room and faced the mirror.  With the exception of
12  Filler No. 4, each participant, including [Petitioner] was
    composed.
13

14  Doc. #15-2, Ex. 8 at 4–5.

15       At trial, Petitioner moved to suppress evidence from the lineup, arguing that the lineup

16  was impermissibly suggestive because Petitioner:  (1) had a serious demeanor while the

17  fillers engaged in childish behavior; (2) was the only person in the lineup with braids; and (3)

18  was older than the other lineup participants.  Doc. #1-1 at 72–75.  In denying the motion to

19  suppress, the trial court stated:

20            I reviewed the lineup and I watched the video . . . a couple
     of times – and I think that the structure of the lineup was fair.  I
21   think there was undue humor and snickering by other
     participants, but that was not the fault of law enforcement[,] . . .
22   nor did it in any way point to [Petitioner] as being the one person
     who didn't participate, and therefore I do not feel that the lineup
23   was . . . suggestive in the slightest.  [¶] A[t] this point I do not
     think that any in-court identifications were the product of any
24   impermissible suggestions by law enforcement either before they
     arrived at the lineup or the procedures followed during the lineup.
25

26  Doc. #15-2, Ex. 8 at 6.

27

28                                    13

United States District Court
For the Northern District of California

The state appellate court found that the lineup was not unduly suggestive because the participants' appearance and behavior – though "childish and somewhat distracting" – did not cause Petitioner to stand out in such a way that would suggest to witnesses that he was the perpetrator of the robberies. Doc. #15-2, Ex. 8 at 7–9.  The court further found that the fact that Petitioner "was the only one [in the lineup] with his hair in braids or cornrows" did not render the lineup impermissibly suggestive, because "[s]light differences in hair color or style do not render a photographic identification procedure . . . unduly suggestive." Id. at 8–9 (internal quotations and citation omitted).  Finally, the court determined that the in-court identifications were reliable under the totality of the circumstances. Id. at 9–10.

On federal habeas, to prevail on a claim that a lineup was unduly suggestive, a petitioner must show that the identification procedures used in the case were "'so unnecessarily suggestive and conducive to irreparable mistaken identification that he was denied due process of law.'" Johnson v. Sublett, 63 F.3d 926, 929 (9th Cir. 1995) (finding no due process violation where any possible prejudice defendant may suffer from unreliable identification was mitigated by cross-examination and other courtroom safeguards) (quoting Stovall v. Denno, 388 U.S. 293, 301–02 (1967)).  An identification procedure is impermissibly suggestive when it emphasizes the focus upon a single individual thereby increasing the likelihood of misidentification.  See e.g., Simmons v. United States, 390 U.S. 377, 383–84 (1968) (photographic procedures that emphasize the focus upon a single individual increase the danger of misidentification); United States v. Bagley, 772 F.2d 482, 493 (9th Cir. 1985) (same); compare United States v. Burdeau, 168 F.3d 352, 357–58 (9th Cir. 1999) (finding that placement of defendant's photo in center of photo array, plus insubstantial differences in hue and facial expression in remainder of subjects did not impermissibly suggest that defendant was the offender) with United States v. Montgomery, 150 F.3d 983, 992–93 (9th Cir. 1998) (showing witness photographs of defendant, giving witness copy of photograph and allowing witness to view defendant in courtroom day before witness testified found impermissibly suggestive).

14

In determining whether in-court identification testimony is sufficiently reliable to comport with due process, courts applies a "totality of circumstances" test, which addresses five factors:  (1) the witness' opportunity to view the defendant at the time of the incident; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description; (4) the level of certainty demonstrated by the witness at the time of the identification procedure; and (5) the length of time between the incident and the identification.  Manson v. Brathwaite, 432 U.S. 98, 114 (1977); Neil v. Biggers, 409 U.S. 188, 199–200 (1972); see, e.g., United States v. Drake, 543 F.3d 1080, 1089 (9th Cir. 2008) (finding that where first four factors weighed in favor of reliability, four-day delay between robbery and photo spread identification did not call accuracy of identification into question); United States v. Jones, 84 F.3d 1206, 1209–10 (9th Cir. 1996) (although identification by three robbery witnesses of defendant, who was the only civilian presented for identification and who was surrounded by police officers was "clearly suggestive," it was permissible because under the totality of the circumstances there was not a substantial likelihood of misidentification); United States v. Wang, 49 F.3d 502, 505 (9th Cir. 1995) (identification of defendant in photographs reliable where witness had ample opportunity to view defendant and actually spoke with him).

Here, in addressing the suggestibility of the lineup procedure, the state appellate court noted that Petitioner was not the only "serious" person in the lineup and that therefore it could not be said that he was singled out for this reason by the identifying witnesses.  Doc. #15-2, Ex. 8 at 7–8.  The court further noted that all of the participants in the lineup – including Petitioner – were African-American males with similar skin color and facial hair. Id. at 8.  The court added that even if Petitioner's assertion that his hairstyle was different from the lineup fillers was accurate, this relatively minor difference in appearance was not so "unnecessarily suggestive" as to lead to the "irreparable" misidentification of Petitioner by witnesses, many of whom easily identified Petitioner subsequently at trial.  Id.

Regarding the reliability of the eyewitness identifications, the court applied the "totality of circumstances" test and first noted that the witnesses had sufficient time to view

15

1   Petitioner during each of the robberies.  Doc. #15-2, Ex. 8 at 10.  The court next observed

2   that during the robberies, Petitioner was in close physical proximity to many of the victims

3   who identified him, suggesting they were able to give him a high degree of attention.  Id.

4   Further, several of the robberies involved lengthy interactions with Petitioner, which gave his

5   victims ample time and opportunity to observe his appearance.  Id.  Finally, the court noted

6   that the one-to-two month lapse in time between the robberies and the lineup was not enough

7   to diminish the reliability of these identifications.  Id. at 11.

8        Here, the Court cannot say that the state court's determinations regarding the lineup

9   procedure and resulting eyewitness identifications – following a detailed and thorough

10  analysis – were contrary to or involved an unreasonable application of, clearly established

11  federal law or that they resulted in a decision that was based on an unreasonable

12  determination of the facts in light of the evidence presented in the state court proceeding.  28

13  U.S.C. § 2254(d); Williams, 529 U.S. at 411; Stovall, 388 U.S. at 301–02; Simmons, 390

14  U.S. at 382–83; Manson, 432 at 114.  Petitioner  therefore is not entitled to relief on this

15  claim.

16        4.    Alleged Due Process Violation Arising from the Trial Court's Exclusion of
                Potentially Exculpatory Evidence
17

18        Petitioner claims the trial court violated his due process rights when it excluded

19  evidence of the inability of a victim in an uncharged robbery to identify Petitioner in court.

20  Doc. #1 at 24–25 & 63–64.  Specifically, Petitioner claims the evidence was exculpatory

21  because it would have negated his guilt of the charged crime or made him guilty of a lesser

22  offense.  Id.  Respondent argues that Petitioner is not entitled to federal habeas relief on this

23  claim based on the doctrine of "invited error"; i.e., because it was defense counsel who

24  moved to exclude this evidence from trial, Petitioner cannot now claim that the trial court

25

26

27

28                                              16

erred in excluding it.[7]  Doc. #15-1 at 18–19.  Respondent further argues that Petitioner's due process rights were not violated by the exclusion of this evidence, and even if they were violated, this evidentiary error was harmless.  Id.

"State and federal rulemakers have broad latitude under the Constitution to establish rules excluding evidence from criminal trials."  Holmes v. South Carolina, 547 U.S. 319, 324 (2006) (internal quotations and citations omitted); see also Montana v. Egelhoff, 518 U.S. 37, 42 (1996) (holding that due process does not guarantee a defendant the right to present all relevant evidence).  This latitude is limited, however, by a defendant's Sixth and Fourteenth Amendment rights to due process and to present a defense.  See Holmes, 547 U.S. at 324.  "While the Constitution prohibits the exclusion of defense evidence under rules that serve no legitimate purpose or that are disproportionate to the ends that they are asserted to promote, well-established rules of evidence permit trial judges to exclude evidence if its probative value is outweighed by certain other factors such as unfair prejudice, confusion of the issues, or potential to mislead the jury."[8]  Id. at 325–26; see Egelhoff, 518 U.S. at 42 (holding that the exclusion of evidence does not violate the Due Process Clause unless "it offends some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental").  The defendant, not the state, bears the burden to demonstrate that the principle violated by the evidentiary rule "is so rooted in the traditions and conscience of our people as to be ranked as fundamental."  Egelhoff, 518 U.S. at 47 (internal quotations and citations omitted).

---

[7]  As set forth below, the Court finds that the exclusion of evidence did not violate Petitioner's due process rights, obviating the need to address Respondent's "invited error" argument.

[8]  The Ninth Circuit has created its own five-factor balancing test to decide if the exclusion of evidence violates due process or the right to present a defense.  See Su Chia v. Cambra, 360 F.3d 997, 1004 (9th Cir. 2004) (citing Miller v. Stagner, 757 F.2d 988, 994 (9th Cir. 1985)); Drayden v. White, 232 F.3d 704, 711 (9th Cir. 2000) (same).  But because the Miller balancing test is a creation of circuit law, it is not "clearly established law" for purposes of habeas corpus review under 28 U.S.C. § 2254(d)(1), see Moses v. Payne, 555 F.3d 742, 760 (9th Cir. 2009), and the Court therefore cannot apply it here.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Here, Petitioner argues that the trial court erred in excluding evidence that a single
2    victim in an uncharged robbery failed to identify him in court.  According to Petitioner's
3    conclusory argument, this evidence was "material" because the excluded witness "speaks
4    English with no assistance[] and is coworkers with several of the prosecution's witnesses
5    against [Petitioner] who do not speak English unless assisted by an interpreter."  Doc. #1 at
6    25.  Petitioner further claims that this excluded witness's  testimony would have
7    "impeach[ed] those witness[es] of the robbery events [with which] Petitioner was charged."
8    Id.; see id. at 63–64.

9    Because judges are permitted broad latitude in excluding evidence for which the
10   probative value is outweighed by the potential of unfair prejudice, confusion of the issues, or
11   potential to mislead the jury, Holmes, 547 U.S. at 324, and because Petitioner has not pointed
12   to any evidence to show that the exclusion of the evidence at issue here – the inability of the
13   victim of an uncharged robbery to identify Petitioner in court – "offend[ed] some
14   [fundamental] principle of justice," Egelhoff, 518 U.S. at 42, the Court cannot say that
15   Petitioner's due process rights were violated by its exclusion.

16   Further, even assuming the trial court erred in excluding this evidence, the error was
17   harmless.  In light of the numerous eyewitness identifications made at the lineup and in court
18   identifying Petitioner as the person who committed the robberies, the Court cannot say that
19   the exclusion of evidence that a single eyewitness who was unable to identify Petitioner had
20   a
21   "substantial and injurious effect or influence in determining the jury's verdict."  Brecht v.
22   Abrahamson, 507 U.S. 619, 637–38 (1993).  Further, as Respondent notes, see Doc. #15-1 at
23   18, admission of the evidence at issue could have in fact encouraged the jury's potentially
24   negative impression of Petitioner in that it would have introduced in court yet another
25   possible crime that Petitioner had committed, but one with which he had not been charged.
26   Petitioner therefore is not entitled to relief on this claim.
27   //
28                                          18

//

5.      Alleged Ineffective Assistance of Counsel

The Sixth Amendment guarantees the right to effective assistance of counsel. Strickland v. Washington, 466 U.S. 668, 686 (1984).  To prevail on a claim of ineffective assistance of counsel, Petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  Id. at 688.  To prove deficient performance, Petitioner must demonstrate that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms.  Id.  To prove counsel's performance was prejudicial, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Id. at 694.

In Richter, 131 S. Ct. at 785, the Supreme Court emphasized that "[t]he pivotal question is whether the state court's application of the Strickland standard was unreasonable," which "is different from asking whether defense counsel's performance fell below Strickland's standard."  "The standards created by Strickland and § 2254(d) are both 'highly deferential' . . . and when the two apply in tandem, review is 'doubly' so."  Id. at 788. The Court must ask not "whether counsel's actions were reasonable" but "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard."  Id.

Petitioner claims trial counsel was ineffective for a variety of reasons.  Doc. #1 at 14–24.  Each of the bases for Petitioner's ineffective assistance of counsel claim is analyzed in turn below.

a.      Counsel's Alleged Failure to File Motion(s) to Suppress

Petitioner claims that counsel was ineffective for failing to file motions to suppress evidence obtained from Petitioner's arrest and the search of his home because the arrest and

United States District Court
For the Northern District of California

search were warrantless, and evidence in the form of eyewitness identifications resulting from the lineup because it was impermissibly suggestive. Doc. #1 at 14–15, 19–20.

As the Court noted earlier, the record shows that Petitioner was subject to an arrest warrant at the time of his arrest – meaning his arrest was not warrantless. See Doc. #1 at 90 & 103. Further, the record shows that OPD sought and obtained a search warrant for Petitioner's home – again, meaning the search of his home was not warrantless – and that pursuant to the search warrant, officers seized some items of physical evidence related to the string of armed robberies, including two jackets and two "beanie" hats. Id. at 90, 98–101. Petitioner has pointed to no evidence in the record – and the Court cannot find any – that any evidence was obtained as a result of the initial "protective sweep" of Petitioner's house that occurred immediately following his arrest but prior to the time when OPD obtained the search warrant. Finally, Respondent correctly notes – and Petitioner concedes – that counsel did, in fact, file motions to suppress evidence from the lineup identifications and the resulting in-court identifications. Doc. #15-1 at 12; see Doc. #1-1 at 72–75. For all these reasons, Petitioner is not entitled to relief on his claim that counsel was ineffective for failing to file motions to suppress.

> b.    Counsel's Alleged Failure in Consenting to Dismissal and Allowing for Refiling of Information

Petitioner also claims his counsel rendered ineffective assistance by consenting to the prosecutor's dismissal of the charges and allowing for the subsequent refiling of an information against him. Doc. #1 at 17–19. Respondent argues that Petitioner is not entitled to federal habeas relief on this claim, because under California law, consent by defense counsel was not necessary for the prosecution to recharge Petitioner. Doc. #15-1 at 14–15. Respondent also notes that it was Petitioner himself, not his counsel, who filed for dismissal of the first information filed against him. Id. at 15.

California Penal Code section 1387 generally bars retrial after the second dismissal of the same felony charges, but it does not bar retrial after the first dismissal of the same felony

United States District Court
For the Northern District of California

charges.  Cal. Penal Code section 1387; see Burris v. Superior Court, 34 Cal. 4th 1012, 1019 (2005) (interpreting section 1387 to mean that felony prosecutions are subject to a two-dismissal rule; two previous dismissals of charges for the same offense will bar a new felony charge).  Neither the statute itself – nor any case law the Court has found interpreting it – indicate that defense counsel must give permission before such charges are refiled. Because the prosecutor was permitted to refile the felony charges against Petitioner after one dismissal, with or without defense counsel's permission, the Court cannot say that counsel's performance was deficient for allegedly consenting to the dismissal and refiling of the charges.  Id.; Strickland, 466 U.S. at 688.

Further, contrary to Petitioner's assertion that it was counsel who unreasonably consented to the dismissal, the record shows that it was Petitioner himself who drafted and filed a motion to dismiss, which the court granted.  Doc. #15-2, Ex. 38.  Therefore, Petitioner's argument that he received ineffective assistance of counsel with regard to the dismissal and refiling of the charges against him is without merit, as counsel was not responsible for the dismissal and refiling.

For all these reasons, Petitioner is not entitled to relief on his claim that counsel was ineffective for consenting to the dismissal and allowing for the subsequent refiling of the charges against Petitioner.

      c.    <u>Counsel's Alleged Failure to Assert Petitioner's Confrontation Rights Regarding the Anonymous Caller</u>

Petitioner claims that counsel rendered ineffective assistance by not confronting the anonymous caller who identified him as the person in the notice posted by OPD in the Oakland Tribune.  Doc. #1 at 21–22.  Respondent argues that Petitioner is not entitled to federal habeas relief on this claim because the anonymous caller did not testify against him, and implies that as a result Petitioner's right to confront the witnesses against him was not violated.  Therefore, respondent adds, counsel was not ineffective for failing to raise the issue.  Doc. #15-1 at 17.  Notwithstanding Respondent's five-line argument – which

United States District Court
For the Northern District of California

represents a misunderstanding of the law of a defendant's right to confrontation – Petitioner

is not entitled to relief on this claim, as explained below.

Here, the relevant testimony regarding this issue was the direct testimony of

prosecution witness Sergeant Alexander Perez, the OPD officer who gave Petitioner's

photograph to the <u>Oakland Tribune</u> and who subsequently received the anonymous tip

regarding Petitioner's identity. Sergeant Perez testified that once the anonymous caller

identified the person in the photograph as "Eugene Rutledge," OPD ran that name in its

computerized system and located a photograph matching the name. Sergeant Perez began to

explain that OPD then ran a criminal history on that name, but was interrupted by an

objection from trial counsel and a request that the jury be admonished. The trial court

immediately admonished the jury, as follows: "Ladies and Gentleman, I am striking the

statement that was just made [that OPD ran a criminal history on the name "Eugene

Rutledge"]. In addition, <u>the statements of the anonymous caller are not admitted for the truth</u>

<u>of the matter stated therein, they are admitted solely to explain subsequent actions of this</u>

<u>witness</u>." <u>See</u> Doc. #15-2, Ex. 4 at 838–39.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal

prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against

him." U.S. Const. Amend. VI. This right applies to all "testimonial" statements, which

include not only statements made in-court but also to out-of-court statements introduced at

trial offered for the truth of the matter asserted, i.e., "testimonial hearsay." <u>Crawford v.</u>

<u>Washington</u>, 541 U.S. 36, 50–51 (2004). Thus, contrary to Respondent's assertion, that the

anonymous caller did not testify at trial does not dispose of Petitioner's claim, because what

the anonymous caller said was introduced through Sergeant Perez's testimony.

But what does prove fatal to Petitioner's claim is the fact that, as the trial court told

the jury, the anonymous caller's statements were not introduced for their truth; rather they

were introduced to show the effect those statements had on Sergeant Perez and what he did

once in receipt of the information the anonymous caller provided. The record shows that

United States District Court
For the Northern District of California

once Perez received the anonymous tip, he used the information to look up Petitioner's name and photograph in the OPD database.  Doc. #1 at 90; Doc. #15-2, Ex. 4 at 839.  The discussion of the anonymous tip at trial, therefore, served not to prove the truth of the matter asserted (that Petitioner committed the robberies in question), but instead to provide background information on how and why the OPD investigated Petitioner as a possible suspect in the first place.  Doc. #15-2, Ex. 4 at 838–39.  As presented, then, Sergeant Perez's testimony regarding the anonymous caller simply was not "testimonial hearsay."  Crawford, 541 U.S. at 50–51.

Because Petitioner has not shown that Sergeant Perez's testimony regarding the anonymous caller was "testimonial hearsay," he necessarily has not shown any violation of Petitioner's Sixth Amendment right to confrontation.  And because Petitioner has not shown a violation of his confrontation right, he necessarily cannot show that counsel was ineffective in failing to exercise that right.  Petitioner is not entitled to relief on this claim.

> d.   Counsel's Alleged Failure in Moving to Exclude Evidence of Uncharged Robbery

Petitioner claims counsel rendered ineffective assistance to him by moving to exclude the testimony of a witness to the January 5, 2006 robbery – specifically the victim's inability to positively identify Petitioner in court – evidence he claims was exculpatory because it would have negated his guilt of the charged crime or made him guilty of a lesser offense.  Doc. #1 at 23–24.  Respondent argues that Petitioner is not entitled to federal habeas relief on this claim because moving to exclude this evidence was a reasonable tactical decision by counsel entitled to deference.  Doc. #15-1 at 17–18.

As the Court found earlier, the exclusion of this evidence, even if erroneous, was harmless, rendering meritless Petitioner's derivative claim that counsel was ineffective for moving to exclude it.  Petitioner is not entitled to relief on this claim.

> e.   Counsel's Alleged Failure to Litigate Violation of Petitioner's Speedy Trial Rights

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Petitioner claims that defense counsel rendered ineffective assistance by failing to litigate the violation of Petitioner's statutory and constitutional speedy trial rights when the trial court suspended the criminal proceedings against him to evaluate his mental competency.  Doc. #1 at 16–17.  But, as set forth below, Petitioner waived his federal constitutional right to a speedy trial when he filed, and the court granted, a motion to dismiss the robbery charges on the ground that his statutory right to a speedy trial under California Penal Code section 1382 was violated when the proceedings were temporarily suspended to allow time for the competency evaluations.  Doc. #15-2, Exs. 38 & 39.

Here, by filing the motion to dismiss with regard to his statutory and California constitutional rights to a speedy trial, and by neglecting to include in his motion any reference to the alleged violation of his federal constitutional speedy trial rights, Petitioner forfeited his right to submit the federal constitutional claim for federal habeas review.  See Campodonico v. United States, 222 F.2d 310, 316 (9th Cir. 1955) ("[t]he constitutional guaranty of a speedy trial is a personal right which may be waived by failure to assert it") (citation omitted); see also People v. Blanchard, 42 Cal. App. 4th 1842, 1849 (1996) (speedy trial claim cannot be asserted for first time on appeal or by petition for writ of habeas corpus).

Further, Petitioner cannot claim that counsel ineffectively assisted him in failing to litigate his federal constitutional speedy trial rights when he had the clear opportunity to do so himself in his motion to dismiss, and did not.  Cf. United States v. Hall, 181 F.3d 1057, 1060–61 (9th Cir. 1999) (where defense counsel does not assert his or her client's right to a speedy trial, a defendant may alert the court himself that he does not wish to waive those rights) (citation omitted).  Nor has Petitioner shown that the outcome of his trial would have been different had counsel litigated the violation of his federal constitutional speedy trial rights.  On the contrary, because Petitioner filed a motion to dismiss the charges against him based on statutory and state constitutional grounds on his own initiative and the proceedings

24

against him were dismissed, counsel litigating the federal constitutional speedy trial claim could not have produced a more favorable result for Petitioner.  See Doc. #15-2, Ex. 39. Thus, Petitioner is not entitled to relief on this claim.

### f.   Counsel's Alleged Failure in Making an Oral Motion Challenging Petitioner's Competency to Stand Trial

Finally, Petitioner claims that defense counsel rendered ineffective assistance by expressing doubt to the trial court at a hearing on August 2, 2006 that Petitioner was competent to stand trial under California Penal Code section 1368.  Doc. #1 at 28–30. Respondent argues that Petitioner is not entitled to federal habeas relief on this claim because it was not ineffective assistance for counsel to assert his doubts as to Petitioner's mental competency, and further, that counsel's assistance would have been deficient had he not expressed these doubts to the trial court.  Doc. #15-1 at 21–22.

Section 1368 of the California Penal Code contemplates the expression of doubt by defense counsel to the judge as to the mental capacity of a criminal defendant.  Cal. Penal Code § 1368; see People v. Harris, 14 Cal. App. 4th 984, 994 (1993) (defense counsel does not provide ineffective assistance of counsel or violate a defendant's due process rights by seeking to prove the defendant's incompetence over the defendant's objections).  After the judge independently determines there is doubt as to whether or not a defendant is competent to stand trial, he or she "shall . . . inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent."  Cal. Penal Code § 1368(a). Further, "[i]f [defense] counsel informs the court that he or she believes the defendant is or may be mentally incompetent, the court shall order that the question of the defendant's mental competence is to be determined in a hearing . . . ."  Cal. Penal Code § 1368(b). Therefore, under section 1368, it is reasonable and necessary that defense counsel express his or her opinions regarding defendant's competency, as counsel's opinion aids the judge's determination of doubt as to competency.  See id.

25

United States District Court
For the Northern District of California

1    Petitioner's claim that counsel's performance was deficient when he expressed doubt

2    as to Petitioner's mental competency is without merit.  Section 1368 provides for such an

3    expression and Petitioner has presented no evidence to show that it was not reasonable for

4    counsel to declare a doubt about Petitioner's competency.  In fact, as Respondent notes,

5    under section 1368, counsel would have rendered deficient performance had he not expressed

6    a doubt to the trial court, as this failure may have violated Petitioner's due process rights by

7    prejudicing Petitioner in future proceedings should it later be determined he was mentally

8    incompetent.  See Pate v. Robinson, 383 U.S. 375, 377 (1966) (the conviction of an accused

9    person while he is legally incompetent violates due process and state procedures must be

10   adequate to protect this right); see also Harris, 14 Cal. App. 4th at 995 (counsel may be

11   deficient in protecting his or her client's due process rights if counsel has a doubt as to

12   defendant's mental competency and does not express this doubt to the court).

13       For the foregoing reasons, Petitioner is not entitled to relief on this claim.

14       6.   Alleged Error by the Trial Court in Permitting the Jury to Use Petitioner's Prior
              Federal Conviction to Enhance His Sentence

15

16       Petitioner claims the trial court erred in permitting the jury to use his prior federal

17   conviction for unarmed bank robbery to enhance his sentence because there was insufficient

18   evidence to support the prior conviction.  Doc. #1 at 31–33.  Respondent argues, citing

19   Lackawanna County Dist. Attorney v. Coss, 532 U.S. 394, 403–04 (2001), that Petitioner is

20   not entitled to federal habeas relief on this claim because a challenge to a prior federal

21   conviction on the grounds of insufficient evidence is not cognizable in a federal habeas

22   action.  Doc. #15-1 at 22–23.  In Lackawanna, the Court held that a state prisoner may not

23   attack in federal habeas proceedings the constitutionality of a prior conviction used to

24   enhance a later sentence.  Id. at 403–04.  Accordingly, this claim is DISMISSED as not

25   cognizable in federal habeas proceedings.

26                                **CONCLUSION**

27

28                                       26

After a careful review of the record and pertinent law, the Court concludes that the Petition for a Writ of Habeas Corpus must be DENIED.

Further, a Certificate of Appealability is DENIED. See Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec. 1, 2009).  Petitioner has not  made "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Nor has Petitioner demonstrated that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  Slack v. McDaniel, 529 U.S. 473, 484 (2000). Petitioner may not appeal the denial of a Certificate of Appealability in this Court but may seek a certificate from the Court of Appeals under Rule 22 of the Federal Rules of Appellate Procedure.  See Rule 11(a) of the Rules Governing Section 2254 Cases (effective Dec. 1, 2009).

The clerk shall terminate any pending motions as moot, enter judgment in favor of Respondent and close the file.

SO ORDERED.


DATED:  April 8, 2011                          _____
                                               CHARLES R. BREYER
                                               United States District Judge

United States District Court
For the Northern District of California

27

1

2

3

4

G:\PRO-SE\CRB\HC.08\Rutledge-08-5426-deny petition-coa.wpd

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California